**GLASS HARLOW & HOGROGIAN LLP**
ATTORNEYS AND COUNSELORS AT LAW
A Limited Liability Partnership
85 BROAD STREET, 16th Fl.
NEW YORK, NY 10004
212-537-6859
FAX NO. 845-510-2219

*Jordan F. Harlow*           E-mail: jharlow@ghnylaw.com
  Partner

September 27, 2021

The Hon. William F Kuntz, II
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    Adams v. Euro Structure LLC et al
             20-cv-04630 (WFK) (TAM)

Dear District Judge Kuntz:

This firm represents Plaintiff Fidel Adams, who is asserting claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") in the above-referenced matter. We are submitting this letter jointly on behalf of both Plaintiff and Defendants requesting that the Court approve a settlement as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and dismiss the action with prejudice. A proposed Settlement Agreement is submitted herewith as Exhibit A and a Stipulation of Discontinuance that the parties are asking you to so order is submitted herewith as Exhibit B.

    I.    BACKGROUND

Plaintiff alleges he was employed by Defendants from on or about June 15, 2016 to on or about April 27, 2020 as a construction, concrete and scaffolding worker. Plaintiff alleges that throughout his employment, he would load materials and attend safety meetings in the mornings before his shift began, and also engage in clean-up after his shift ended approximately twice per week. Plaintiff alleges he was not paid for the extra time he worked before and after his shifts, for which he claims he should have been paid overtime. In September 2020, Plaintiff commenced this action alleging that the Defendants violated state and federal wage and hour laws, including the Fair Labor Standards Act (FLSA) and the New York Labor Laws (NYLL), by failing to compensate him for all of the hours that he, as a non-overtime exempt employee, worked during his employment.

Defendants vehemently deny Plaintiff's claims in their entirety. Defendants claim that Plaintiff was paid overtime during the weeks in which he worked over 40 hours in a week, and that Plaintiff regularly worked less than 40 hours in a week due to weather or other issues in which construction could not occur every day. Defendants also contend that due to local ordinances which strictly govern the time when construction can occur, Plaintiff could not possibly have worked beyond the start and end time of his recorded shifts, which shifts were from 8:00 a.m. to 4:30 p.m. with a 30 minute unpaid meal break.

On March 19, 2021, Defendants filed an Answer to the Complaint denying the allegations therein. On March 22, 2021, the Court entered an order in FLSA case requiring discovery and setting initial pretrial discovery and mediation schedule. In accordance with that order, the parties exchanged employment records and Plaintiff provided a damages calculation spreadsheet.

On June 2, 2021, the Court referred the parties to the Court-annexed mediation program. Thereafter, on August 16, 2021, the parties participated in a mediation with mediator Robert J. Kheel, a respected wage and hour mediator. At the conclusion of the mediation, the parties ultimately agreed to a settle this matter for $50,000, inclusive of fees and costs. From these proceeds, Plaintiff will receive $32,922.87 and his attorneys will receive $17,077.13 in fees and costs.

II.     THE SETTLEMENT IS FAIR AND REASONABLE

Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." See 796 F.3d 199, 206 (2d Cir. Aug. 7, 2015). An FLSA settlement should be approved when it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.* 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Matheis v. NYPS, LLC*, No. 13 Civ. 6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016). Moreover, "[c]ourts approve FLSA settlements when they are reached as the result of a contested litigation to resolve *bona fide* disputes." *In Re Penthouse Executive Club Compensation Litigation*, 2014 U.S. Dist. LEXIS 5864, 22 (S.D.N.Y. 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

"Because Cheeks itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 WL 502131, at *4 (S.D.N.Y. Feb. 8, 2019). The court in *Wolinsky* set forth the following criteria for determining whether a proposed settlement is fair and reasonable: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335. Based on the above criteria, the proposed settlement, which provides for the payment of $50,000.00 to the Plaintiff

was achieved after hard fought and arm's-length negotiations between experienced counsel. Therefore, the settlement is fair and should be approved.

The first factor weighs in favor of approval. Based on Plaintiff's estimated damages calculations, Plaintiffs' range of possible recovery for unpaid wages was between $0.00 and $70,000. The $50,000 settlement amount to Plaintiff, with Plaintiff receiving $32,922.87, therefore provides approximately 50% of Plaintiff's liquidated base owed wages. Based on the litigation risks discussed below, the total settlement of $50,000.00 is a fair and reasonable result.

The second and third factors also favor approval. If the Parties were to continue litigation, the Parties would need to conduct full discovery, including costly depositions of all parties, including corporate representatives for Defendants. There is also a sharp dispute with regard to Plaintiff's alleged unpaid wages claims. Defendants deny and continue to deny that Plaintiff, as a construction worker, was entitled to any overtime other than that for which he was already paid. Plaintiff asserts that he worked hours over 40 in a week for which he was not compensated and entitled to be paid for all of the hours that he worked. As such, it would require significant testimony from both parties to argue issues such as the actual number of hours worked each week, and the amount Defendants paid Plaintiffs as wages. As a result, while Plaintiff believes he could establish liability based on his testimony, this would require significant time and prolonged litigation and Plaintiff acknowledges the significant risk that he would not be able to prove entitlement to any unpaid wages, including unpaid overtime. Recognizing the uncertainties of litigation and the additional time it would take to resolve his claims, he is willing to settle at this point in time for $50,000.

In addition, the proposed settlement is reasonable and should be approved because it represents a fair compromise. Plaintiff's potential recovery is based on facts that he assumes a jury would find, but which Defendants contest. The parties disagree as to the number of unpaid hours he worked. If Defendants succeeded in establishing that Plaintiff worked less hours than he claims, Plaintiff's recovery would be significantly less that the proposed settlement amount. Plaintiff has evaluated the strengths and weaknesses of his claims, and he has considered the fact that his ability to collect money now from Defendants is certain. In light of these factors, the settlement is fair and reasonable.

The fourth and fifth factors also weigh in favor of approval. This settlement follows extensive arms-length negotiations by experienced counsel which occurred prior to mediation and were subsequently aided during the course of mediation. During the August 16th mediation, Mediator Kheel spent significant time with both sides and helped the parties assess the respective strengths and weaknesses of their positions. The parties' negotiations were framed by the mediator's involvement and knowledge of the issues, and the ultimate settlement amount recognizes that both sides considered the issues that the mediator raised with them. The mediator's role in facilitating this settlement is another indication that it is fair and reasonable and should be approved. *Khait v. Whirlpool Corp.* 2010 U.S. Dist. LEXIS 4067, 20 (E.D.N.Y. 2010) (finding that an FSLA settlement should be approved because it was the result of a contested litigation and arms' length negotiations by parties represented by counsel before an experienced mediator); *see also Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 U.S. Dist. 27899, 13 (S.D.N.Y. 2009) and *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* 396 F.3d 96, 116 (2d Cir. 2005)

(noting that fairness and appropriateness could be presumed where settlement resulted from negotiations conducted by an experienced attorney). The mediator's involvement also demonstrates the absence of fraud or collusion and the settlement amount represents a significant percentage of Plaintiff's potential recovery juxtaposed with the sharp dispute as to claimed hours worked by each side. Accordingly, the proposed settlement satisfies all five *Cheeks* factors.

Finally, the agreement's provisions are identical to similar agreements which have previously been approved by courts in this circuit. The release provision in the agreement is a mutual general release, and Plaintiff is no longer employed by Defendants. *See Strauss v. Little Fish Corporation*, No. 19 Civ. 10158 (LJL), 2020 WL 4041511, at *4-6 (S.D.N.Y. July 17, 2020) (finding that a mutual general release "permits the two parties, who have parties, who have evident hostility towards one another, to walk away from the relationship" where there no further employment relationship); *see also Lola v. Skadden, Arps, Meagher, Slate, & Flom LL*P, No. 13 Civ 5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (finding that a mutual release "assuage[es] concerns that the waiver unfairly benefits only Defendants"): *Souza v. 65 St. Marks Bistro*, No. 15 Civ. 327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) ("[a] mutual release will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes").

Moreover, while the agreement contains a non-disparagement provision, it is carefully tailored to allow Plaintiff to make truthful statements about his experience litigating his case. Similar provisions are regularly approved within this Circuit. *See e.g. See Torres v. McGowan*, No. 18 Civ. 6099 (RML), No. 18 Civ. 6099, 2020 WL 5369056, at *3 (E.D.N.Y. Sep. 8, 2020) (citing Lazaro-Garcia v. Sengupta Food Services, No. 15 Civ. 4259 (RA), 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015)). In addition, the agreement contains a clause prohibiting automatic retaliation against Defendants related to potential future employment that is identical to clauses previously approved within this Circuit. *See Vargas Ortiz v. Three Star on First*, No. 19 Civ. 928 (OTW), 2019 WL 4013981, at *3 (S.D.N.Y. Aug. 26, 2019) (finding that an agreement that had a no future employment clause "lack[ed] certain objectionable provisions that court have found fatal in other proposed FLSA settlement").

Finally, the settlement provides for reasonable attorneys' fees and costs to Plaintiff's counsel. Pursuant to the agreement, counsel will receive $16,666.66 in fees and $410.47 in costs (two-thirds of the filing fee and service costs) for a total of $17,077.13. The proposed fee award should be approved because it was consensual and a one-third contingency payment was agreed to by Plaintiff. *See Mireku v. Red Vision Sys. Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. 2013); *Martinez v. Consulate Gen. of Algeria in N.Y.*, 2016 U.S. LEXIS 157999, 8-9 (S.D.N.Y). Additionally, both of Plaintiff's counsels have been working diligently on this matter since their retention in April 2020.

Specifically, Jordan Harlow is a Partner of Glass Harlow & Hogrogian LLP, and his work is generally billed at a rate of $350 per hour. Todd Krakower is a Member of Krakower DiChiara LLC, and his work is generally billed at a rate of $450 per hour. Both Mr. Harlow and Mr. Krakower have extensive experience litigating wage and hour and employment discrimination claims, with 35 years of practice collectively between the two of them. Mr. Harlow first worked for Glass Krakower LLP as Of Counsel beginning in 2012, then he worked as Of Counsel and

subsequently Partner of Glass & Hogrogian LLP, until he became a named Partner of Glass Harlow & Hogrogian LLP. His entire practice has been dedicated to employment and labor law litigation. Mr. Krakower first worked as an associate for the Manhattan office of the law firm Mound, Cotton & Wollan; then as a litigator, trial attorney, and Deputy Assistant Chief for the City of New York's Office of Corporation Counsel from 1997-2002; then as an in-house claims counsel for Wright Risk Management in 2003-2004, and between 2004-2010 as senior litigation counsel for small boutique employment defense firms before beginning his own firm in 2010, which deals primarily with employment and labor law related matters. Both Mr. Harlow and Mr. Krakower expended significant time and resources first trying to resolve these claims prior to litigation, and then putting the case into suit. In total, more than 105 hours of attorney time has been spent drafting and responding to pre-litigation exchanges of correspondence, participating in discussions with the client and adversary, drafting and filing the Complaint, preparing and attending court conferences, preparing and reviewing discovery exchanges pursuant to the Court's discovery protocol for FLSA cases, drafting a mediation statement and corresponding spreadsheet detailing every single hour of alleged overtime by Plaintiff, preparing for the mediation before Robert J. Kheel, and preparing these documents for approval. Even at a significantly reduced rate of $350/hr for Mr. Krakower and $250/hour for Mr. Harlow, the time invested by counsel so far would amount to more than $30,000.00 in fees alone, which is greater than what is being allocated to fees and costs.

For all of the foregoing reasons, the parties jointly are requesting that this settlement be approved and the matter dismissed. We thank you for your attention and the assistance you provided in helping us reach a fair and reasonable resolution to this litigation.

Respectfully

/s/
Jordan Harlow, Esq.

Enc.
CC: All Counsel (via ECF)