UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x
FIDEL ADAMS,

                     Plaintiff,

        -against-

EURO STRUCTURE LLC et al.,

                     Defendants.
-------------------------------------------------------x

**REPORT AND RECOMMENDATION**
20-CV-4630 (WFK) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

       Plaintiff Fidel Adams ("Plaintiff") initiated this action against Defendants Euro Structure LLC; Structural Preservation Systems, LLC; Structural Group, Inc.; John Crigler; Garry Naughton; Peter H. Emmons; and Marek Wnorowski (collectively "Defendants")[1] on September 29, 2020. (*See* Complaint ("Compl."), ECF No. 1.) Plaintiff seeks damages for unpaid wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law, Art. 6 § 190 *et seq.* and Art. 19 § 650 *et seq.* ("NYLL").

       Plaintiff has reached a proposed settlement of his wage and hour claims with Defendants, the terms of which are set forth in a settlement agreement filed with the Court. (*See* Sept. 27, 2021 Proposed Settlement Agreement ("Settl. Agr."), ECF No. 33-1, referred to herein as the "settlement agreement.") On September 27, 2021, the parties requested that the Court approve the settlement agreement as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016). (*See* Pl.'s Letter, ECF No. 33.)

---

[1] Defendants Euro Structure LLC and Marek Wnorowski were dismissed on January 11, 2021. (*See* Pl.'s Notice of Voluntary Dismissal, ECF No. 16; Jan. 11, 2021 Order, ECF No. 17.)

On October 13, 2021, the Court held a fairness hearing (referred to herein as the "Fairness Hearing") on Plaintiff's motion, at which the Court raised concerns regarding the "Mutual General Releases" section in the parties' settlement agreement. (*See* Oct. 13, 2021 ECF Minute Entry; Transcript of Oct. 13, 2021 Fairness Hearing ("Tr."), ECF No. 38; Settl. Agr., ECF No. 33-1, § 2.) On November 4, 2021, following a request to submit additional briefing, Defendants filed a supplemental letter in support of the proposed mutual general release. (Defs.' Supp. Letter, ECF No. 37; *see also* Oct. 20, 2021 Joint Status Report, ECF No. 36.)

For the reasons set forth below, the Court recommends that the settlement agreement not be approved as fair and reasonable in its current form in light of the overly broad release provisions.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff alleges that he worked as a construction, concrete, and scaffolding worker for Defendants from June 15, 2016, until April 27, 2020. (Compl., ECF No. 1, ¶¶ 4, 13.) Plaintiff describes his duties and responsibilities as including "[d]emolition and breakdown of structural components; [p]arking location maintenance and repair; [r]oadwork and patching; [p]ouring of materials into designated locations; [and r]igging and properly attaching equipment." (*Id.* ¶ 51.) Plaintiff further alleges that he worked five days a week from 6:30 a.m. or 7:30 a.m. until at least 4:30 p.m., or approximately forty-nine to fifty-four hours per week, and that he was compensated during the course of his employment at an hourly rate ranging from $18.00 per hour to $29.50 per hour. (*Id.* ¶¶ 54–56.) Plaintiff claims Defendants did not properly pay him for overtime or for hours worked before and after his scheduled shift, and that Defendants failed to record

2

the number of hours he worked or provide him with "any documentation as to his hours or his rate of pay." (*Id.* ¶¶ 57–61.)[2]

On August 30, 2021, the parties informed the Court that they had reached a settlement of Plaintiff's FLSA and NYLL claims. (*See* Aug. 30, 2021 Joint Status Report, ECF No. 31.) Under the terms of the settlement agreement, Defendants agree to pay a total of $50,000, of which Plaintiff is to receive $32,922.87 and Plaintiff's counsel is to receive $17,077.13 in attorneys' fees and costs. (Settl. Agr., ECF No. 33-1, § 1.) On September 27, 2021, the parties filed a motion seeking the Court's approval of the amount and terms of the proposed settlement agreement. (*See* Pl.'s Letter, ECF No. 33.) However, during the Fairness Hearing, the Court noted that the settlement agreement's broad release of Defendants appeared contrary to Second Circuit case law interpreting *Cheeks*. (*See* Tr., ECF No. 38, at 8–16; *id.* at 8:6–9 ("[G]enerally speaking the release clauses in these FLSA agreements need to be fairly narrowly tailored to wage and hour claims.").) The Court directed the parties to file a joint status report advising "whether the parties would like to revise the provision due to the concerns identified by the Court on the record, or whether any party plans to submit additional briefing on the issue." (Oct. 13, 2021 ECF Minute Entry.)

On October 20, 2021, Defendants requested the opportunity to submit additional briefing in support of the proposed mutual general release provisions, which the Court granted the next day. (Oct. 20, 2021 Joint Status Report, ECF No. 36; Oct. 21, 2021 ECF Order.) On November 4, 2021, Defendants filed their supplemental letter, which argues that "courts in the Second Circuit routinely approve a mutual release of claims in FLSA

---

[2] Although initially styled as a collective action (*see* Compl., ECF No. 1, ¶¶ 35–49, 62–67), Plaintiff never moved for collective action certification under the FLSA or class certification under Rule 23.

3

settlement agreements" when the release is (1) truly mutual; (2) negotiated by competent counsel on both sides; (3) the settlement does not resolve a class or collective action; and (4) the plaintiff is a former employee with no continuing relationship with the defendant employer. (Defs.' Supp. Letter, ECF No. 37, at 1.)

For the reasons set forth below, the Court finds the clause releasing Defendants to be far too broad, and the record does not demonstrate why a general release, even if mutual, is necessary or beneficial for Plaintiff in this case. The Court accordingly recommends that the parties' settlement agreement as currently written not be approved.

## DISCUSSION

### I. Legal Standards

In reviewing proposed settlements under the FLSA, the core inquiry for courts is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Rotthoff v. New York State Cath. Health Plan, Inc.*, No. 19-CV-4027 (AMD) (CLP), 2021 WL 1310220, at *2 (E.D.N.Y. Apr. 8, 2021) (internal quotation marks omitted); *see also Cheeks*, 796 F.3d at 206. Courts in this circuit have identified several factors for determining whether a proposed settlement is fair and reasonable, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted); *see also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citing the *Wolinsky* factors).

As the Second Circuit recently held, if a court finds that a "proposed settlement is unreasonable in whole or in part, the court . . . must reject the agreement or give the parties an opportunity to revise it." *Fisher*, 948 F.3d at 605. The court cannot, however, "simply rewrite the [settlement] agreement." *Id.* Accordingly, "[w]hen presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." *Id.* at 606 (*citing Evans v. Jeff D.*, 475 U.S. 717, 727 (1986)).

## II. Mutual General Release Provisions

### A. Applicable Law

In order to ensure that settlement agreements are the product of arm's-length bargaining, promote the remedial purposes of the FLSA, and do not condone employer overreach, courts routinely reject "settlements which purport to waive all claims against a defendant, including those unrelated to wage-and-hour issues . . . ." *Seecharan v. Heritage Place LLC*, No. 20-CV-3898 (WFK) (LB), 2021 WL 1299692, at *4 (E.D.N.Y. Mar. 15, 2021) (citing *Cheeks*, 796 F.3d at 206; *Gurung v. White Way Threading, LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016)), *report and recommendation adopted*, No. 20-CV-3898 (WFK) (LB), 2021 WL 1299436 (E.D.N.Y. Apr. 7, 2021); *see also Burton v. City Lumber, Inc.*, No. 20-CV-3290 (LDH) (LB), 2021 WL 4487878, at *2 (E.D.N.Y. Sept. 30, 2021); *Sumba Lema v. LIC Evergreen Cleaners Inc.*, No. 19-CV-836 (WFK) (LB), 2019 WL 6312378, at *3 (E.D.N.Y. Nov. 8, 2019), *report and recommendation adopted*, No. 19-CV-836 (WFK) (LB), 2019 WL 6307412 (E.D.N.Y. Nov. 25, 2019); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015).

The reasoning is that "because Congress intended employers to pay a fair wage . . . it would counterserve those legislative objects for an employer to extract a

5

broad general release from its employee in exchange for an agreement to simply pay her what she was due," and that, essentially, the "general portion of [such a] release is 'uncompensated.'" *Strauss v. Little Fish Corp.*, No. 19-CV-10158 (LJL), 2020 WL 4041511, at *4 (S.D.N.Y. July 17, 2020); *see also Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) ("Broad releases are doubly problematic in the FLSA context, where courts have a duty to police unequal bargaining power between employees and employers." (internal quotation marks omitted)). As the court in *Nights of Cabiria* explained:

> The parties have every right to enter into a settlement that waives claims relating to the existing suit in exchange for a settlement payment. But the Court will not countenance employers using FLSA settlements to erase all liability whatsoever in exchange for partial payment of wages allegedly required by statute. A release as broad as that in the proposed Agreement confers an uncompensated, unevaluated, and unfair benefit on the employer and is inequitable and unfair.

96 F. Supp. 3d at 181 (internal quotation marks and footnotes omitted); *see also Gurung*, 226 F. Supp. 3d at 229 (expressing concern regarding broad mutual general releases because "they may stand to benefit only the employer defendant, who realistically may be less likely than the employee plaintiff to have latent claims against its adversary").

Notwithstanding this principle, "some courts . . . have approved a general release when (1) it is mutual; and (2) the employer and employee have ceased their employment relationship." *Strauss*, 2020 WL 4041511, at *5. Courts approving such releases typically ensure that "the agreement was the fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel," and that there are no "collective action concerns" in terms of binding class members outside the negotiations. *Zhu v. Meo Japanese Grill & Sushi, Inc.*, No. 17-CV-3521 (CLP), 2021 WL 4592530, at *4 (E.D.N.Y. Oct. 6, 2021) (internal quotation marks omitted). In these situations, "[s]uch a broad mutual general release operates as a walk away provision: it permits each side to

6

terminate their relationship entirely free from fear that the other will re-engage in the form of a lawsuit." *Strauss*, 2020 WL 4041511, at *5.

B. <u>Analysis</u>

The provision at issue in this case is included in the settlement agreement under the section entitled "Mutual General Releases," and states that Plaintiff releases Defendants from:

> any and all charges, complaints, claims (individually and on behalf of a class), liabilities, obligations, suits, demands, rights, liens, costs, losses, debts, expenses, agreements, contracts, covenants, actions, suits, causes of action, judgments, and orders of whatever kind or nature in law, equity, or otherwise . . . that [Plaintiff] had, now have, or in the future may or could have against [Defendants], arising out of or relating to any matter of Plaintiff's employment up to the Effective Date of this Agreement . . . .

(Settl. Agr., ECF No. 33-1, § 2(a).) The settlement agreement further stipulates that this release applies to a non-exhaustive list of more than thirty different statutes and common-law theories, extending far beyond the realm of wage and hour claims. (*Id.*; *see also id.* §§ 2(g), (h).)[3] The settlement agreement then provides that Defendants, who have

---

[3] In its entirety, the proposed general release as to Defendants states:

> As a material inducement to Defendants to enter into this Agreement, and in consideration of the Settlement Payment and other consideration, the receipt and value of which is hereby agreed to and acknowledged, Plaintiff, on behalf of himself, his heirs, successors, representatives, assigns, attorneys, agents, executors, and administrators ("Releasors"), hereby irrevocably and unconditionally release, acquit, and forever discharge Defendants and their present, past, and future owners, affiliates, related business entities, parent companies, subsidiaries, predecessors, successors, assigns, divisions, directors, officers, including Altman and Bonnet, trustees, members, employees, stockholders, representatives, insurers, business managers, accountants, attorneys, heirs, agents, executors, and administrators, in their individual and representative capacities, and all persons acting by, through, and under, or in concert with any of these (hereinafter collectively referred to as "Releasees"), from any and all charges, complaints, claims (individually and on behalf of a class), liabilities, obligations, suits, demands, rights, liens, costs, losses, debts, expenses, agreements, contracts, covenants, actions, suits, causes of action, judgments, and orders of whatever kind or nature in law, equity, or otherwise, including but not limited to, all claims for penalties,

not articulated an actionable claim against Plaintiff, will also release Plaintiff from all claims in perpetuity. (*Id.* § 2(b).)

---

> general damages, punitive damages, compensatory damages, special damages, equitable relief, attorneys' fees, and costs actually incurred, of any nature whatsoever known or unknown, suspected or unsuspected, concealed or hidden, that Releasors had, now have, or in the future may or could have against Releasees, arising out of or relating to any matter of Plaintiff's employment up to the Effective Date of this Agreement, including, any claim, whether brought on an individual basis or as part of a class, collective, or representative action, under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq.; the Older Worker Benefits Protection Act of 1990; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k); the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (1991); 42 U.S.C. § 1981; 42 U.S.C. § 1983; the National Labor Relations Act, 29 U.S.C. § 151 et seq.; the Equal Pay Act of 1963, 29 U.S.C. § 206(d); the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.; the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq.; The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.; the New York State Human Rights Law, N.Y. Executive Law § 290 et seq.; the New York City Human Rights Law, New York City Charter and Administrative Code; Title VIII, § 8-107 et seq.; the New York Civil Rights Law, N.Y. Civil Rights Law§ 79-e et seq.; New York Labor Law, § 1 et seq.; the New York Workers' Compensation Law, N.Y. Workers' Compensation Law § 1, *et seq.*, New Jersey Wage and Hour Law, N.J.S.A. 3411-56a, *et seq.* (to the extent of Plaintiff's claims of unpaid overtime, unlawfully deducted wages, failure to provide wage notices, failure to provide wage statements and failure to pay spread of hours premium); any other federal, state, and local equal employment, fair employment, or civil or human rights law (whether statutory, regulatory, or decisional); the Coronavirus Aid Relief Security Act; the Families First Coronavirus Response Act; the New York Emergency Sick Leave Act; the statutory, regulatory, or common law of any jurisdiction, including, but not limited to, any and all tort claims (e.g., assault; battery; false imprisonment; defamation; intentional infliction of emotional distress; negligent infliction of emotional distress; wrongful termination; negligent hiring, supervision and/or retention; conversion; interference with contract; abusive discharge; and/or loss of consortium, companionship, services or society), any and all contract claims (e.g., breach of contract, fraud, and/or breach of covenant of good faith and fair dealing) and under any and all applicable federal, state and local laws, administrative rules or regulations, including any and all claims already asserted and unasserted and related to Plaintiff's employment with Defendants (or his relationship with any other Releasee) and the cessation thereof.

(Settl. Agr., ECF No. 33-1, § 2(a)). Defendants note in their letter that the references to "Altman" and "Bonnet" were inadvertent. (Defs.' Supp. Letter, ECF No. 37, at 3 n.3.)

Defendants argue that this broad release is "part and parcel of the bargain" and should be approved because "both parties were represented by competent counsel here, well aware of what they were giving up with respect to the mutual relief, and then agreed based upon that." (Tr., ECF No. 38, at 11:25–12:5.) Further, counsel for Defendants represented at the Fairness Hearing that they previously have "had no issue with having a mutual release provision such as this one . . . where both parties are getting the benefit of a release." (Tr., ECF No. 38, at 14:24–15:1.) In their supplemental letter, Defendants contend that "[t]he mutual release provision is truly mutual because Plaintiff receives reciprocal general releases from all persons and entities to whom Plaintiff provides a general release," and "because it is symmetrical." (Defs.' Supp. Letter, ECF No. 37, at 4.) Defendants also argue that the proposed release is fair and reasonable because Plaintiff is a former employee and it thus "makes sense to include [the release] to bring complete closure for the parties in an FLSA settlement" and that there is no "danger that the release [was] obtained through improper job-related pressure." (*Id.*)

The Court does not question Defendants' assertions that (1) the release provisions are facially mutual; (2) Plaintiff is no longer employed by Defendants; (3) the agreement was the result of negotiations between able counsel; and (4) there are no collective action concerns. (*Id.*) *See also Meo Japanese Grill & Sushi, Inc.*, 2021 WL 4592530, at *4 (identifying these four factors); *Strauss*, 2020 WL 4041511, at *5 (same). Rather, the Court's concern stems from the parties' failure to establish *why* it "makes sense" to include such a walk away provision in *this case. See, e.g., Burton v. City Lumber, Inc.*, No. 20-CV-3290 (LDH) (LB), ECF No. 14, at 4–5 (E.D.N.Y. Mar. 22, 2021) ("Plaintiff's counsel in this case does not demonstrate how the release provision at issue benefits [plaintiff], nor why the release is not economically one-sided."), *report and recommendation adopted*,

9

No. 20-CV-3290 (LDH) (LB), 2021 WL 4487878, at *1 (E.D.N.Y. Sept. 30, 2021); *Gurung*, 226 F. Supp. 3d at 229 ("The fact that the general release is styled as mutual, although favoring the settlement, does not salvage it, absent a sound explanation for how this broad release benefits the plaintiff employee."). In other words, "despite the formal reciprocity" contained in the settlement agreement's release provisions, Defendants' "release of all its claims against [Plaintiff] appears an empty gesture—the equivalent of giving away ice in the winter—such that the release, while mutual in form, appears one-sided as a matter of economic substance." *Gurung*, 226 F. Supp. 3d at 229; *see also Flores-Mendieta v. Bitefood Ltd.*, No. 15-CV-4997 (AJN), 2016 WL 1626630, at *2 (S.D.N.Y. Apr. 21, 2016) (concluding that even though the general release was reciprocal, the court could not "countenance employers using FLSA settlements to erase all liability whatsoever" for payment "allegedly required by statute").

During the Fairness Hearing, Plaintiff's counsel represented that although Plaintiff would be "fine with a limited release," he agreed to the mutual general release because Plaintiff indicated that he had "no other claims" against Defendants at present. (Tr., ECF No. 38, at 8:25–9:5.) However, as explained above, the release would cover a virtually unlimited spectrum of liability related not only to Defendants but to a long list of affiliated individuals and entities, for all claims Plaintiff "had, now [has], or in the future may or could have." (*See* Settl. Agr., ECF No. 33-1, §§ 2(a), (g), (h).) Thus, just as the Court is concerned that Defendants are the only parties actually benefitting from the mutual general release provisions, so too is it concerned that the release is so broad it "could be applied to absurd effect." *Poko-St. Ann L.P.*, 176 F. Supp. 3d at 344; *see also Guzman v. Kahala Holdings, LLC*, No. 15-CV-9625 (HBP), 2017 WL 4748389, at *2 (S.D.N.Y. Oct. 18, 2017) (rejecting release where, if it "were given literal effect, plaintiffs

would not be able to sue defendants' former employees for breach of contract or for an assault").

There are certainly cases within the Second Circuit approving of mutual releases along the lines of the release proposed in this case. (*See* Defs.' Supp. Letter, ECF No. 37, at 1–2.) As Defendants point out, "there is nothing inherently unfair about a release of claims in an FLSA settlement." *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-CV-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016). Indeed, such releases may be appropriate where they permit, for example, "two parties, who have evident hostility towards one another, to walk away from the relationship." *Strauss*, 2020 WL 4041511, at *6. However, as discussed above, this is not one of those cases. Based on the record and the perfunctory justification offered by the parties, the Court finds no basis for recommending approval of the expansive general release proposed in this case.[4] Indeed, to do so would condone employer overreach, by providing an "uncompensated, unevaluated, and unfair benefit" to the employer, which would be "inequitable and unfair." *Nights of Cabiria*, 96 F. Supp. 3d at 181.

---

[4] The Court also notes that many of the cases cited by Defendants in support of the release contain specific distinguishing factors. (*See generally* Defs.' Supp. Letter, ECF No. 37, at 1–2.) For instance, in *Chowdhury v. Brioni Am., Inc.*, the court approved the parties' mutual general release in the context of a bifurcated settlement agreement that resolved both FLSA and non-FLSA claims. No. 16-CV-344 (HBP), 2017 WL 5953171, at *5–6 (S.D.N.Y. Nov. 29, 2017). In *Snead v. Interim HealthCare of Rochester, Inc.*, the court approved a mutual general release where the provision's terms were "*not as broad* as an all-encompassing general release clause." 286 F. Supp. 3d 546, 555 (W.D.N.Y. 2018) (emphasis added). In *Flores v. Hill Country Chicken NY, LLC*, the court rejected a facially mutual release where "it would bar claims by plaintiffs not only against defendants themselves, but also against a broad array of Persons, including former employees, members and shareholders," and could therefore "be applied to absurd effect." No. 16-CV-2916 (ATH) (BP), 2017 WL 3448018, at *2 (S.D.N.Y. Aug. 11, 2017). And in *Plizga v. Little Poland Rest. Inc.*, the court approved the proposed release, at least in part, because the parties showed that the settlement payment exceeded the value of plaintiff's FLSA claim. No. 15-CV-8820 (LAK) (BCM), 2016 WL 9307474, at *6 (S.D.N.Y. July 18, 2016). In any event, none of the cited opinions undermine the notion that courts must analyze mutual general releases on a case-by-case basis. *Cf. Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) (noting the court was "inclined to allow for a general release of the kind proposed here, *at least in this case*" (emphasis added)).

## CONCLUSION

Because the Court finds the proposed general release of Plaintiff's claims to be too broad and one-sided to be considered fair and reasonable, it does not parse through the remainder of the proposed settlement agreement here. The Court notes, however, that based on an initial review of the agreement and the additional information adduced at the Fairness Hearing, the proposed settlement appears to otherwise comport with the *Wolinsky* factors.

In light of the foregoing, the Court respectfully recommends that the settlement agreement should be rejected in its current iteration and the parties should be given an opportunity to submit a revised version within thirty days. *See Fisher*, 948 F.3d at 605. Until then, the Court respectfully recommends that Plaintiff's motion for settlement approval not be granted until the deficiencies outlined above are remedied.

\* \* \* \* \*

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

**SO ORDERED.**

Dated: Brooklyn, New York
November 23, 2021

*Taryn A. Merkl*
_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE